UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOSE BALAGUER PEREZ,

For Online Publication Only

                       Plaintiff,

**MEMORANDUM & ORDER**
   -against-                                 17-CV-3045 (JMA)

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                       Defendant.
----------------------------------------------------------------X
**APPEARANCES**

    Sharmine Persaud
    Persaud & Zeltman
    675 Broadway
    Massapequa, NY 11758
    *Attorney for Plaintiff*

    Sean P. Greene
    United States Attorney's Office, EDNY
    271 Cadman Plaza East, 7th Floor
    Brooklyn, NY 11201
    *Attorney for Defendant*

**AZRACK, United States District Judge:**

       Plaintiff Jose Balaguer Perez ("Plaintiff") seeks review of the final determination by the Commissioner of Social Security, reached after a hearing before an administrative law judge, denying Plaintiff disability insurance benefits under Title II of the Social Security Act (the "Act"). The case is before the Court on the parties' cross-motions for judgment on the pleadings. For the reasons discussed herein, Plaintiff's motion for judgment on the pleadings is GRANTED in part and DENIED in part, the Commissioner's cross-motion is DENIED, and the case is REMANDED for proceedings consistent with this opinion.

# I. BACKGROUND

## A. Procedural History

On January 7, 2014, Plaintiff filed an application for disability insurance benefits, alleging disability as of September 17, 2012, due to bilateral knee impairments and left knee surgeries. (Tr. 147–48, 160.[1]) Following denial of his application, Plaintiff requested a hearing and appeared with his attorney for an administrative hearing before Administrative Law Judge April M. Wexler (the "ALJ") on February 1, 2016. (Tr. 23–44, 93–94.)

In a decision dated March 3, 2016, the ALJ denied Plaintiff's claim, finding that he was not disabled under the Act. (Tr. 7–22.) Plaintiff filed a timely request for review before the Appeals Council. (Tr. 55–61.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on April 27, 2017. (Tr. 1–6.) This appeal followed. (ECF No. 1.)

## E. The ALJ's Decision

The ALJ issued her decision on March 3, 2016, applying the five-step process described below, pursuant to 20 C.F.R. § 404.1520. (Tr. 7–22.) At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 17, 2012. (Tr. 12.) At step two, the ALJ found that Plaintiff's bilateral knee condition was a severe impairment. (Id.) At step three, the ALJ determined that Plaintiff's impairments, alone or in combination, do not meet or medically equal the severity of any of the regulations' listed impairments. (Tr. 13.) The ALJ did not specify which listings she considered.

The ALJ then addressed step four, first considering Plaintiff's residual functional capacity ("RFC"). An RFC determination identifies what work a claimant can still perform, despite her

---

[1] Citations to "Tr." refer to pages of the certified administrative record filed by the Commissioner. (ECF No. 22.)

limitations. See C.F.R. § 404.1545. The ALJ found that Plaintiff retained the RFC to perform sedentary work,[2] except that he: (1) can never kneel, crouch, or crawl; (2) must have the ability to use a cane for ambulation; and (3) would need to be off-task for up to five minutes per hour to take a break, stretch, or change position. (Tr. 13–15.)

Upon consideration of the evidence, the ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the evidence. (Tr. 13.) Based on the RFC, the ALJ concluded that Plaintiff is not capable of performing his past relevant work. (Tr. 15.)

At step five, the ALJ relied on the testimony of a vocational expert to determine that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 16–17.) Accordingly, the ALJ found that Plaintiff was not under a disability as defined in the Act from September 17, 2012 through the date of her decision. (Tr. 17.)

## II. DISCUSSION

### A. Social Security Disability Standard

Under the Act, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled when his "physical or mental impairment or impairments are of such severity that he is not only unable to

---

[2] Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a); SSR 96-9p. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about two hours of an eight-hour workday. Sitting would generally total about six hours of an eight-hour workday. (Id.)

3

do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Commissioner's regulations set out a five-step sequential analysis by which an ALJ determines disability. See 20 C.F.R. § 404.1520. The analysis is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (second alteration in original) (quoting Green–Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). At step four, the Commissioner determines the claimant's RFC before deciding if the claimant can continue in his or her prior type of work. 20 C.F.R. § 404.1520(a)(4)(iv). The claimant bears the burden at the first four steps; but at step five, the Commissioner must demonstrate that "there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

B. Scope of Review

In reviewing a denial of disability benefits by the SSA, it is not the function of the district court to review the record de novo, but instead to determine whether the ALJ's conclusions "'are supported by substantial evidence in the record as a whole, or are based on an erroneous legal standard.'" Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "'To determine whether the findings are supported by substantial evidence, the reviewing

4

court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Thus, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it." State of New York ex rel. Bodnar v. Sec. of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990). An ALJ's decision is sufficient if it is supported by "adequate findings . . . having rational probative force." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

Conversely, a remand for further proceedings is warranted when the Commissioner has failed to provide a full and fair hearing, to make necessary findings, or to have correctly applied the law and regulations. See Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999); see also 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). Remand is also appropriate when an ALJ overlooks an important piece of evidence. See 42 U.S.C. § 405(g) (permitting the court to order the Commissioner to review additional evidence "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"); see also Carnevale v. Gardner, 393 F.2d 889, 890–91 (2d Cir. 1968) (directing remand to allow the Secretary to consider a major piece of evidence ignored by the hearing examiner).

## C. Analysis

Plaintiff puts forth four arguments in support of his appeal. First, Plaintiff argues that the ALJ erred at step three by failing to state which listing she considered and explain why she found that no listing was met or medically equaled. (Pl.'s Mem. 10–17.) Second, he claims that the

5

ALJ's RFC determination is not supported by substantial evidence. (Pl.'s Mem. 17–21.) Third, he argues the ALJ failed to properly evaluate his subjective complaints. (Pl.'s Mem. 21–24.) Finally, Plaintiff alleges that the Commissioner failed to sustain her burden of establishing that there is no other work in the national economy that Plaintiff could perform. (Pl.'s Mem. 24–25.)

> **1. The ALJ Did Not Err in Finding that Plaintiff's Impairments Did Not Meet or Medically Equal a Listed Impairment**

At step three in the analysis, Plaintiff bears the burden to establish that his impairments meet or medically equal a listed impairment. See Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (requiring plaintiff to present medical findings to prove symptoms equal a listing). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is equivalent to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Id. (internal quotations omitted; emphasis in original); see also 20 C.F.R. § 404.1525(c)(3).

Without specifying which listed impairment she considered, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments . . . ." (Tr. 13.) Plaintiff argues that the ALJ erred in making this determination because substantial evidence in the record shows that Listing 1.02A and/or 1.03 is met or medically equaled. (Pl.'s Mem. 12.) Listing 1.02A provides:

> 1.02 *Major dysfunction of a joint(s) (due to any cause)*: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

20 C.F.R. Part 404, Subpart P § 1.02A. Listing 1.03 provides:

6

> 1.03 *Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint*, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

20 C.F.R. Part 404, Subpart P § 1.03. Both listings require a showing of an "inability to ambulate effectively," which is defined as:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

20 C.F.R. Part 404, Subpart P, App. 1, Listing 1.00(B)(2)(b)(1). Plaintiff points to, inter alia, his treatment notes showing chronic left knee pain, four surgeries on the left knee, a restricted range of motion in the left knee, and the need for a cane to ambulate in support of his argument that his impairments meet the criteria of Listings 1.02A and 1.03. (Pl.'s Mem. 14–15.)

Even if the other criteria of Listings 1.02A and/or 1.03 was met, there is no evidence in the record demonstrating Plaintiff's "inability to ambulate effectively" at any time. "Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 1.00(B)(2)(b) (emphasis added). Plaintiff's medical records indicate that he needs only one cane to ambulate, limiting the use of one arm. (See Tr. 247, 309, 335, 374, 453, 458, 466.) There is no evidence that Plaintiff required an assistive device that limited the use of both arms. Although the ALJ did not explicitly articulate this reasoning, "the absence of express rationale for an ALJ's conclusions does not prevent the court from upholding them as long as the court is able to look to other portions

of the ALJ's decision and to credible evidence in finding that the determination was supported by substantial evidence." Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 112 (2d Cir. 2010) (summary order); see Solis v. Berryhill, 692 F. App'x 46, 48 (2d Cir. 2017) (summary order) (citing Berry v. Schweiker, 675 F.2d 464, 468 (2d Cir. 1982) (per curiam)) (upholding a finding that a listing was not met even though the ALJ did not explicitly discuss the listing because the ALJ's decision as a whole and record before him supported the conclusion). Accordingly, the ALJ's determination that Plaintiff's limitations did not equal a listed impairment is supported by substantial evidence in the current record.[3]

Finally, the Court rejects Plaintiff's argument that the ALJ was required to call a medical expert to opine on whether Plaintiff's impairment Listing 1.02A and/or 1.03 for the same reasons outlined in my recent decision, De Gonzalez v. Berryhill, No. 16-CV-6723, 2018 WL 6834474, at *8 (E.D.N.Y. Dec. 28, 2018) (rejecting the same argument because it relies on case law outside this Circuit, misreads the applicable regulations, and would add an unnecessary burden).

Accordingly, the ALJ's determination that Plaintiff's impairments were not medically equivalent to any of the listings in the Appendix was based on substantial evidence and correct legal principles.

### 2. The ALJ's RFC Determination is Not Based on Substantial Evidence

An RFC determination specifies the "most [a claimant] can still do despite [the claimant's] limitations." Barry v. Colvin, 606 F. App'x 621, 622 n.1 (2d Cir. 2015) (summary order); see Crocco v. Berryhill, No 15-CV-6308, 2017 WL 1097082, at *15 (E.D.N.Y. Mar. 23, 2017) (stating that an RFC determination indicates the "nature and extent" of a claimant's physical limitations and capacity for work activity on a regular and continuing basis) (citing 20 C.F.R. § 404.1545(b)).

---

[3] To the extent that new medical evidence is admitted into the record on remand, the ALJ may need to reconsider whether a listing is met or medically equaled.

In determining a claimant's RFC, "[t]he Commissioner must consider objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history." Crocco, 2017 WL 1097082, at *15; see also Barry, 606 F. App'x at 622 n.1 ("In assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's subjective complaints of pain.") (quoting 20 C.F.R. § 416.945(a)(3)). An RFC determination must be affirmed on appeal where it is supported by substantial evidence in the record. Barry, 606 F. App'x at 622 n.1.

Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence, primarily because the ALJ had no medical source opinion from which to conclude that Plaintiff was limited to sedentary work. (See Pl.'s Mem. 17.) The Court agrees.

The regulations provide that although a claimant is generally responsible for furnishing evidence upon which to base an RFC assessment, before the Commissioner makes a disability determination, the ALJ is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545 (citing 20 C.F.R. §§ 404.1512(d)-(f)). That the RFC determination does not match a medical opinion does not require remand. See Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.") However, although the RFC determination is an issue reserved for the ALJ, an ALJ "cannot arbitrarily substitute [her] own judgment for [a] competent medical opinion." Balsamo v. Chater,

9

142 F.3d 75, 81 (2d Cir. 1998) (internal citation omitted); see Hilsdorf v. Comm'r of Soc. Sec., 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.").

Here, the ALJ had no medical source opinion to support her determination that Plaintiff retained a RFC for sedentary work. The ALJ discounted the treating source opinions and did not obtain an opinion from an examining or non-examining consultative medical expert. The ALJ gave treating physician Dr. Katsigiorgis' opinion that Plaintiff "remains totally disabled" little weight because "it provides no specific vocational limitations and the ultimate determination of disability is reserved for the Commissioner." (Tr. 14.) In a questionnaire dated January 26, 2016, Dr. Leddy assessed Plaintiff as being able to sit, stand, and walk 0-1 hour in a workday, lift and carry five pounds, and could not push, pull, kneel, bend, or stoop due to left knee pain. (Tr. 686–93.) The ALJ gave this opinion little weight because Dr. Leddy stated that he saw Plaintiff only twice since 2012 and "is [Plaintiff's] primary care physician and not a specialist in the area of concern." (Tr. 15.) Notably, Dr. Leddy did not treat Plaintiff after his left knee replacement surgery in October 2014.[4] (See Tr. 473–74.)

Instead of relying on a medical opinion, the ALJ determined Plaintiff's RFC based on her own interpretation of the medical evidence in the record and Plaintiff's testimony. (See Tr. 15.) Specifically, the ALJ explained that:

---

[4] Based on the current record, the ALJ appears to have given good reasons to discount the opinions of Dr. Leddy and Dr. Katsigiorgis. Although not cited by the ALJ, the fact that Dr. Leddy did not treat Plaintiff after his left knee replacement surgery in October 2014 and third arthroscopic surgery on his left knee in January 2015 would be an additional reason to discount Dr. Leddy's opinion at least as it relates to the period after October 2014.

10

> The sedentary exertional level of the [RFC] accounts for the limitations that his condition would place upon him. The lifting requiring [sic] of only 10 pounds occasionally takes into consideration issues he would have because of his condition. The restriction to never kneeling, crouching or crawling also gives credence to his knee issues. The ability to use a cane for ambulation accommodates his testimony in this regard. In addition, the [RFC] provides for him to be off task up to 5 minutes each hour to accommodate his need for a break or to change positions and stretch.

(Tr. 15.) Without a supporting medical opinion of Plaintiff's functional limitations, the ALJ's RFC determination that Plaintiff was capable of sedentary work "constituted an impermissible interpretation of bare medical findings" and is not supported by substantial evidence. Guarino v. Colvin, 14-CV-00598, 2016 WL 690818, at *2 (W.D.N.Y. Feb. 22, 2016); see House v. Astrue, 11-CV-915, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) ("Because there is no medical source opinion supporting the ALJ's finding that [claimant] can perform sedentary work, the court concludes that the ALJ's RFC determination is without substantial support in the record and remand for further administrative proceedings is appropriate."); see also Palascak v. Colvin, 11-CV-0592, 2014 WL 1920510, at *9 (W.D.N.Y. May 14, 2014) ("Where, as here, the medical findings and reports merely diagnose the claimant's impairments without relating the diagnoses to specific physical, mental, and other work-related capacities, the [ALJ's] determination of [RFC] without a medical advisor's assessment of those capacities is not supported by substantial evidence.") (internal quotation marks and citation omitted). Here, the ALJ's finding that Plaintiff can lift ten pounds occasionally and can meet the walking and standing requirements of sedentary work was based on the ALJ's own interpretation of the medical evidence in the record—not on an opinion from Dr. Katsigiorgis, Dr. Leddy, or another acceptable medical source. (See Tr. 15.)

Although the ALJ's RFC determination need not match a medical opinion, see Matta, 508 F. App'x at 56, the opinion of a medical expert is necessary in this case to determine Plaintiff's RFC. Given Plaintiff's bilateral knee impairment and four knee surgeries, including a total

replacement of his left knee, "this is not a case where the medical evidence shows 'relatively little physical impairment' such that the ALJ 'can render a common-sense judgment about functional capacity.'" Palascak v. Colvin, 11-CV-0592, 2014 WL 1920510, at *9 (W.D.N.Y. 2014) (quoting Manso-Pizarro v. Sec. of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996); cf. Riccobono v. Berryhill, 17-CV-1371, 2019 WL 569563, at *10 (E.D.N.Y. Feb. 11, 2019) ("It was appropriate for ALJ Wexler to rely on the credible parts of Dr. Spain's opinion together with the overwhelming evidence in the record that Plaintiff did not have significant physical limitations in formulating her RFC.").

Thus, remand is warranted for proper consideration of Plaintiff's RFC in accordance with the regulations. On remand, the ALJ is directed to obtain a medical opinion on Plaintiff's physical and functional limitations during the relevant time frame. The Court notes that "[t]he RFC assessment must first identify [Plaintiff's] functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraph (b), (c), and (d) of 20 C.F.R. §§ 404.1545." SSR 96-8p. "Only after that may [the] RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p. However, the Court will not grant Plaintiff's request to remand for calculation of benefits because the record does not lead to the definitive conclusion that Plaintiff is disabled. See Williams v. Apfel, 204 F.3d 48, 50 (2d Cir. 2000) (directing remand for further proceedings where the record was not entirely persuasive with respect to the plaintiff's disability).

### 3. The Court Does Not Reach Whether the ALJ Properly Evaluated Plaintiff's Subjective Complaints

Plaintiff contends that the ALJ did not properly evaluate her subjective complaints. (See Pl.'s Mem. 21.) The ALJ's credibility findings "must be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams v. Bowen, 859 F.2d 255, 260–61 (2d

Cir. 1988). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." SSR 96-7p(5). The ALJ has the discretion to evaluate and ultimately not credit Plaintiff's testimony about the severity of his pain and functional limitations. See Burnette v. Colvin, 564 F. App'x 20, 605, 609 (2d Cir. 2008) (summary order).

The Court makes no finding regarding the ALJ's credibility determination of Plaintiff because it may change in light of any new evidence considered on remand, including new medical opinions. Accordingly, on remand, the Commissioner should reassess Plaintiff's subjective complaints and, if necessary, Plaintiff's RFC, in light of the record as a whole.[5]

### 4. The Court Does Not Reach Whether the Commissioner Sustained Her Burden at Step Five

Finally, Plaintiff argues that the Commissioner failed to show that there is other gainful work in the national economy which he could perform by not incorporating the full extent of Plaintiff's limitations in the hypothetical the vocational expert. (See Pl.'s Mem. 24.) "When the hypothetical posed to the vocational expert is based on a [RFC] finding that is supported by substantial evidence, the hypothetical is proper and the ALJ is entitled to rely on the vocational expert's testimony." Snyder v. Colvin, 667 F. App'x 319, 321 (2d Cir. 2016). The Court will not reach this question because, as previously discussed, the ALJ's RFC determination is not supported by substantial evidence. (See Section (C)(2).) Upon reconsideration of Plaintiff's RFC, the ALJ should reevaluate whether vocational expert testimony is necessary in order to properly determine Plaintiff's ability to perform jobs existing in the national economy.

---

[5] The Commissioner is encouraged to expressly address all the factors for evaluating credibility identified in the SSA regulations. 20 C.F.R. § 404.1529(c)(3).

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiff's motion for judgment on the pleadings; DENIES the Commissioner's cross motion; and REMANDS the case for further proceedings consistent with this opinion. The Clerk of the Court is directed to close the case and enter judgment accordingly.

**SO ORDERED.**

Dated: March 25, 2019
Central Islip, New York

                                                                                 /s/ JMA
                                                  JOAN M. AZRACK
                                                  UNITED STATES DISTRICT JUDGE